UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT R. BLYSTONE and CARLA BLYSTONE, husband and wife, and the marital community comprised thereof,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TACOMA, a Washington municipal corporation, JOSEPH BUNDY and PAMELA RUSH, husband and wife, and the marital community comprised thereof,<br><br>Defendants.<br><br>JOSEPH BUNDY and PAMELA RUSH, husband and wife,<br><br>Counter-claimants and Third-Party Plaintiffs,<br><br>v.<br><br>THE CITY OF TACOMA, a municipal corporation; ROBERT J. BLYSTONE and CARLA BLYSTONE, husband and wife; LEROY PARDINI and PATRICIA KARNAY, husband and wife,<br><br>Third-Party Defendants. | Case No. C04-5535FDB<br><br>ORDER DENYING CITY OF TACOMA'S MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-PARTY PLAINTIFFS JOSEPH BUNDY AND PAMELA RUSH |

ORDER - 1

This matter arises out of an incident occurring on July 20, 2002 when Third-Party Defendant Pardini refused to drive his car over a "transition plate" on Pacific Avenue near a construction site in Tacoma. The City of Tacoma (City) moves for summary judgment on the third-party claims asserted by Third-Party Plaintiffs Bundy against the City and Third-Party Defendants Blystone.

Joseph Bundy is a police officer with the Tacoma Police Department (TPD) who was off-duty working police security/traffic control for the construction company at a Pacific Avenue construction site where the light rail was being installed. Bundy was assisting a flagman in directing traffic through a construction area marked by barricades and cones where vehicles were directed across a gradual transition ramp. Bundy was in full uniform, in a patrol car, with lights activated. Robert Blystone is a sergeant with the Tacoma Police Department.

The construction project was for the light rail system. The area where the incident occurred was between the Harmon Brewery and 21st Street, and the transition plate went over the light rail project in this area. [Bundy Dep. p. 54-55.] When Pardini approached the transition plate at approximately 0035 hrs on July 20, 2002, he refused to cross the transition ramp as directed by the flagman. The flagman testified that Pardini began to cuss at him, then said he was going to back up. [Fleming Dep. p. 19] The flagman told him that he could not because there was traffic behind him, so Pardini backed to the side then started out again toward the flagman who jumped out of the way. [*Id.* 19-20.] Pardini then stopped, and Bundy exited his police vehicle and came over. [*Id.* p. 20.] Bundy told Pardini that he was under arrest for vehicular assault, to shut off the engine, and to exit the vehicle. Bundy alleges that Pardini belligerently confronted him asserting that he was an architect, that he owned all the buildings around the area, that his car cost $70,000, and if he so much as scratched it he would sue him. [Bundy Decl. 3-4.] Bundy also alleges that Pardini asked him several times "What would it take to make this go away?" [Bundy Compl., p. 4; Decl. of Luxenberg, p. 22-24.] Bundy handcuffed Pardini, who remained in his vehicle. During this time, according to the flagman, Pardini's wife, who was also in the car, got out after her husband's arrest and began hitting

ORDER - 2

and pushing Bundy. [Fleming Dep. 25-26.] Bundy called for back-up, and eventually secured Pardini in the back of his patrol vehicle. [Bundy Decl. p. 4; Luxenberg Decl. p. 22.]  Bundy then went to Pardini's car to get the license plate number, and as he was reading the license number through a shoulder mike radio, Pardini's wife grabbed the mike and screamed into it. [Bundy Decl. p. 4.]

Sergeant Blystone arrived and Bundy told him what had occurred.  Pardini's wife interjected with her version of events.  Another officer, TPD Officer Verone was instructed to conduct a DUI investigation, but when Pardini invoked his Miranda rights, Blystone told him he could no longer go forward with the DUI investigation.  Bundy and the City agree that Blystone ordered Bundy to write Pardini a criminal citation for reckless driving and to release Pardini.  The parties also agree that Pardini asked to speak to Blystone away from Bundy.  Blystone directed Bundy to write up the criminal citation for Pardini to sign and have it ready by the time they returned.  It is undisputed that Blystone then walked several feet away and talked with Pardini and his wife.  Blystone contends that he talked with his supervisor Lieutenant Barbara Justice about the appropriate charges for the incident, they agreed that neither vehicular assault nor reckless driving, which includes the element of "willful and wanton disregard," were appropriate, and they agreed that a report for the prosecutor's review would be written by Bundy and the prosecutor could file charges if appropriate. [Blystone Dep. P. 30:9-23; 52:11-24.] Pardini was subsequently charged by the City with the criminal offense of disobeying a flag person. [Pardini dep. pp. 8:18-9:12; 246:18-20.)

Blystone took issue with Bundy's report because the report "contained several untruths and it accused me of bribery." [Blystone Dep. p. 64:13-18.] Blystone filed a complaint against Bundy through his chain of command. [Blystone Dep. pp. 77:24– 78:23.]

Bundy asserts that he was retaliated against almost immediately because Blystone showed his report to other officers.  Lt. Justice asked Bundy to report to her office, that she and Sgt. Yuhasz were there to issue him a notice of an Internal Affairs complaint by Blystone.  Bundy told Justice that he was following the whistleblower policy and had advised two supervisors of what he believed was

ORDER - 3

1  an improper government act.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Bundy claims that he was retaliated against when he exercised his constitutionally protected First Amendment right in reporting suspected highly irregular or illegal conduct of his superior Blystone.

The City asserts that Bundy was disciplined, but not because he reported what he claims he believed was possible misconduct. The City contends that TPD disciplined Bundy because (a) his report was inaccurate, included improper and unsubstantiated personal speculation and opinion, and violated TPD policy; and (b) he was insubordinate (publicly undermining and disparaging Blystone in front of a citizen), discourteous, and failed to perform his job in a satisfactory manner in connection with the subject incident.

In order to state a claim against a governmental employer for violation of the

ORDER - 4

First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for adverse employment action.

*Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). "An employee's speech is protected under the First Amendment if it addresses 'a matter of legitimate public concern.'" 320 F.3d at 973.

> To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden.

*Id.* at 975. If the alleged retaliatory action is so insignificant that it does not deter the exercise of First Amendment rights, it does not constitute an adverse employment action. *Id.* For example, in *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998), the plaintiff had only shown "that he was bad-mouthed and verbally threatened."

*Keyser v. Sacramento City Unified School District* 265 F.3d 741 (9th Cir. 2001) listed three ways that a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions:

> First, a plaintiff can introduce evidence regarding the " 'proximity in time between the protected action and the allegedly retaliatory employment decision,' " from which a " 'jury logically could infer [that the plaintiff] was terminated in retaliation for his speech.' " [citations omitted.] Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." [citation omitted.] Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pretextual."

*Coszalter*, 320 F.ed at 977. Three to eight months, depending on the circumstances, was held to be within the time frame giving rise to the inference of retaliation. *Id.* Inconsistent application of a policy can be evidence of pretext. *Id.* at 978.

Once it is determined that a plaintiff has engaged in protected speech, the Court must balance the employer's interest in fulfilling its public responsibilities and Bundy's First Amendment speech rights. This test requires the following inquiry as to whether the speech:

> (i) impairs discipline or control by supervisors, (ii) disrupts co-worker relations, (iii) erodes a close personal relationship premised on personal loyalty and confidentiality,

ORDER - 5

(iv) interferes with the speaker's performance of his or her duties, or (v) obstructs the routine operation of the office.

*Rendish v. City of Tacoma*, 123 F.3d 1216 (9th Cir. 1998), *cert. denied* 524 U.S. 952 (1998).

The City assumes for the purposes of its motion that Bundy's police report constitutes a matter of public concern, and Bundy argues that his speech is protected because it involves the perceived wrongdoing of another police officer.

Bundy contends that he was subjected to an adverse employment action.  In his Declaration at pages 11 – 12, he details twelve ways in which he was refused training and promotion opportunities owing to ineligibility because of the Internal Affairs investigation.  For example, he states that because he was the subject of an Internal Affairs investigation, he was taken off the Field Training Officer eligibility list, the Search and Rescue eligibility list, received a five-year reprimand for unsatisfactory performance (making him ineligible for promotion), and that Blystone told sectors one and two that Bundy was not to show up on any of his scenes.

Bundy contends that his speech was a motivating factor for the adverse employment actions taken and that he has shown this in all three ways outlined in *Coszalter*.  Bundy contends that when he got back to the station after the incident with Pardini, he was informed that Sgt. Blystone had put Bundy's report in his desk drawer and several other sergeants had read it. [Bundy Decl. p. 10.] While he was being informed of this, he was asked to report to Lt. Justice and was informed of the Internal Affairs complaint initiated by Sgt. Blystone.  *Id.*   Moreover, Bundy contends that his whistle blower report was not being investigated, that only the complaint by Blystone against him was being investigated.  *Id.*  Finally, Bundy asserts the inappropriateness of Blystone's transfer to Internal Affairs where he was reviewing tapes of the investigation against Bundy. *Id.* p. 11.

The City does not specifically address these contentions, but argues that under the balancing test, "each of the foregoing considerations has been realized as a result of Bundy's inaccurate report and assertion of allegations proven by the IA investigation to be unsupported." The City points to Bundy's statement that not everyone has taken his side, but some have taken Blystone's side and

ORDER - 6

"they polarized this particular incident." [City memorandum, p. 20.]   The City argues that close working relationships have been eroded, and that the TPD has an interest in effectively managing its operations and disciplining officers who violate its policies.  The City also argues that the TPD also has an interest in having its officers submit factually accurate reports, and that in the Internal Affairs investigation, officers at the scene did not corroborate Bundy's implication that Blystone may have accepted a bribe. [Ramsdell Decl., Ex. 3.] Requiring a factually accurate police report does not violate First Amendment rights, and the TPD could not function if police officers could disregard factual accuracy.  Additionally, the City argues that TPD has a legitimate interest in ensuring that lawful orders of its superior officers will be followed and the chain of command respected, a concept acknowledge by Bundy. [Bundy Dep. p. 124:17 – 125:3.] The insubordinate conduct at issue is the allegation that before Pardini left the scene, Bundy spoke to him as follows:

> I don't know why my sergeant wants me to do this, but he does. ... You're gonna get to go home tonight. ... But this is not the way I would handle this if I was left in my own decision. ...  You'd be going to jail, ah, so would your wife. ... I just want you to know I'm following orders, and that tonight is your lucky night.

[Ramsdell Decl., p. 48; Bundy Dep. pp. 103:23 – 104:9.]

Thus, the City reiterates that Bundy's discipline stemmed from his failure to submit a factually accurate report and from his insubordination, and that Bundy's interest in such speech does not exceed TPD's legitimate and compelling interests set forth above.

## CONCLUSION

Bundy has made a sufficient showing in support of his claim on the First Amendment issue to defeat the City's Motion for Summary Judgment.  There are genuine issues of material fact that preclude the Court from determining the issues of law discussed above.  Having decided that summary judgment will be denied on the federal claim, summary judgment on the state claims will be denied as well.

ACCORDINGLY,

ORDER - 7

1   IT IS ORDERED: The City of Tacoma's Motion for Summary Judgment Against Third-
2   Party Plaintiff's Joseph Bundy and Pamela Rush [Dkt. # 45] is DENIED.

4       DATED August 29, 2005.

                                    FRANKLIN D. BURGESS
                                    UNITED STATES DISTRICT JUDGE

26  ORDER - 8